ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, John Cucci, Jr., an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
 
 [1]
 

 
 *64
 
 UNDERLYING FACTS
 

 Count I
 

 In 2004, Jason Wenk hired respondent to represent him in four separate criminal cases. Respondent charged Mr. Wenk $10,000 for pre-trial preparation and motions and an additional $2,500 for each case when it went to trial. The retainer agreement also established that the services of any experts would require additional fees. Between September 2004 and January 19, 2007, Mr. Wenk’s mother paid respondent a total of $20,075 in fees and expenses for the four cases. However, only one case went to trial before Mr. Wenk terminated respondent’s services on January 30, 2007. At that time, Mr. Wenk requested that respondent provide him with an accounting and a refund. When respondent did not comply with this request, Mr. Wenk filed a complaint with the ODC in February 2007, alleging respondent failed to refund the unearned portion of the fees and again | ¡.requesting an accounting. In response to the complaint, respondent asserted he earned the entire fee. However, he did not provide an accounting. Accordingly, the ODC directed respondent to appear for a sworn statement on December 12, 2007 and to produce the accounting and other financial documents. Respondent appeared for the sworn statement on that date but did not produce the accounting and documents. Furthermore, during his sworn statement, respondent falsely stated that he had returned Mr. Wenk’s file to his mother.
 

 In February 2010, respondent and Mr. Wenk participated in the Louisiana State Bar Association’s (“LSBA”) Fee Dispute Resolution Program, following which the arbitrator determined that respondent owed Mr. Wenk a refund in the amount of $4,910.11, plus legal interest from the date of the award until paid. As of December 2010, respondent had refunded $4,000 to Mr. Wenk.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(5) (failure to refund an unearned fee), 1.15 (safekeeping property of clients or third persons), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Count II
 

 In 2005, respondent represented Jeffery Winn in a criminal case. Mr. Winn and respondent agreed to a $30,000 fixed fee for the representation, which sum Mr. Winn authorized respondent to deduct from a $36,000 insurance settlement he had collected. However, respondent did not disburse the remaining $6,000 to Mr. Winn, nor did he account for the funds.
 

 Thereafter, the criminal case proceeded to a jury trial, and Mr. Winn was convicted of second degree murder. The court of appeal affirmed the conviction.
 
 State v. Winn,
 
 43,114 (La.App. 2nd Cir.3/19/08), 978 So.2d 1239. Respondent |sthen filed a writ application with this court, which was denied as untimely.
 
 State v. Winn,
 
 08-0858 (La.6/26/09), 11 So.3d 495.
 

 Respondent also collected $8,041 for Mr. Winn from a forfeiture proceeding which he had agreed to handle on a contingent fee basis. However, Mr. Winn never received any of the proceeds, and respondent never provided him with an accounting of the funds. Respondent also failed to provide the ODC with an accounting, despite requests to do so.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5 (fee arrangements) and 1.15.
 

 
 *65
 

 Count III
 

 This count relates to a criminal charge against respondent and alleges he failed to cooperate with the ODC by giving false and misleading testimony in a sworn statement concerning the status of the criminal charge. The hearing committee concluded that the ODC did not prove the alleged misconduct by clear and convincing evidence, and the disciplinary board agreed with this finding. The ODC’s brief in this court does not object to this portion of the board’s recommendation, and accordingly, Count III is not discussed herein.
 

 Count TV
 

 In January 2007, Patricia Hunter Crow paid respondent $756 to visit her son, Tony Hunter, in jail and determine if he could handle Mr. Hunter’s post-conviction relief application. Thereafter, respondent failed to visit Mr. Hunter in jail, failed to communicate with Ms. Crow, and failed to refund the fee.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable ^diligence and promptness in representing a client), 1.4 (failure to communicate with a client), and 1.5(f)(5).
 

 Count V
 

 Doris and Roosevelt Whitty hired respondent in November 2005 to represent their son, John Floyd, in connection with a post-conviction relief claim, paying him $3,500. On March 21, 2006, respondent filed an untimely application for post-conviction relief, alleging the same grounds for relief that Mr. Floyd had alleged in a previous
 
 pro se
 
 filing that was denied on August 15, 2005. The trial court denied the application without a hearing on March 23, 2006.
 

 Thereafter, respondent and the Whittys participated in the LSBA’s Fee Dispute Resolution Program. On April 24, 2007, the arbitrator ordered respondent to refund the entire fee paid by the Whittys, plus $100 to compensate them for having to appear at the arbitration. Respondent only paid $700 toward the award before he ceased making payments. He also refused to respond to the Whittys’ inquiries concerning the matter.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.5, 1.5(f)(5), 3.1 (meritorious claims and contentions), and 8.4(c).
 

 Count VI
 

 Respondent was appointed to represent Charles Gillespie in a criminal matter pending in the United States Court of Appeals for the Fifth Circuit. Respondent failed to review the complete trial record and did not file a brief pursuant to a court order. He also failed to respond to a show cause order from the clerk’s office and did not respond to voicemail messages left by the clerk’s office. Accordingly, on April 2, 2008, the chief judge of the Fifth Circuit removed ^respondent as Mr. Gillespie’s counsel and ordered that any funds payable to him be forfeited. The chief judge also ordered respondent to show cause within fifteen days why he should not be disciplined. Respondent did not respond to the show cause order, and on June 3, 2008, he was suspended from practicing law in the Fifth Circuit for one year.
 

 The ODC forwarded notice of the related disciplinary complaint to respondent at his last known address. However, the notice was returned marked “unclaimed unable to forward.”
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.4(c) (knowing disobedience of an obligation under the rules of the tribunal),
 
 *66
 
 8.1(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
 

 Counts VII and VIII
 

 In 2008, two of respondent’s clients filed disciplinary complaints against him. The ODC sent respondent notice of the complaints via certified mail. However, the notices were returned unclaimed.
 

 The ODC alleged respondent’s conduct in both counts violated Rule 8.1(c) of the Rules of Professional Conduct.
 
 [2]
 

 Count IX
 

 By way of background, in April 2004, Anthony Boult filed a
 
 pro se
 
 application for post-conviction relief. Based on one of the claims in the | r,application, an evidentiary hearing was set on the issue of whether the prosecution had failed to disclosure allegedly exculpatory evidence
 
 (Brady
 
 material).
 

 In December 2004, Adrian Lee, Mr. Boult’s half-brother, hired respondent to represent Mr. Boult at the evidentiary hearing. Respondent charged, and Mr. Lee paid, a fee of $2,500 for the representation. However, before respondent could file pleadings or present any evidence at the hearing, the prosecution submitted an affidavit from Mr. Boult’s trial counsel stating that he had been provided a copy of the alleged
 
 Brady
 
 material prior to trial. Accordingly, the trial court rejected the
 
 Brady
 
 claim, and the evidentiary hearing was canceled.
 

 Thereafter, respondent and Mr. Lee agreed respondent would apply the $2,500 to the filing of an application for post-conviction relief based on a claim of newly-discovered evidence, which claim had already been raised and denied in Mr. Boult’s 2004
 
 pro se
 
 application for post-conviction relief. Respondent also requested and was paid an additional $1,500 to investigate and develop newly-discovered eyewitness evidence to be included in the application. However, he failed to inform Mr. Lee or Mr. Boult that an application based on previously-asserted claims would almost certainly be rejected as repetitive.
 

 In December 2005, respondent filed the agreed-upon application for post-conviction relief. In March 2006, the trial judge dismissed the application as repetitive and untimely, observing that the newly-discovered evidence claim had been raised in the earlier application and rejected.
 

 Respondent then agreed to file a writ of review on Mr. Boult’s behalf with the Court of Appeal, Second Circuit, and in April 2006, he was paid $1,000 for this service. Respondent falsely told Mr. Boult that there was no time limit to file the writ despite the fact that the trial judge had fixed a deadline of July 26, 2006. Concerned that respondent would not file the writ timely, on June 1, 2006, Mr. Boult sent respondent a letter terminating his services and requesting a refund of 17the $1,000 fee. He also requested a refund of the first $2,500 fee for the evidentiary hearing that never took place. After receiving no response from respondent, Mr. Boult resent the letter two more times before the end of June 2006. Mr. Lee sent a similar letter to respondent on June 8, 2006. Respondent did not respond to these requests and did not refund any portion of the fees he was paid.
 

 The ODC alleged respondent’s conduct violated the following provisions of the
 
 *67
 
 Rules of Professional Conduct: Rules 1.4, 1.5(f)(5), 3.1, and 8.4(c).
 

 DISCIPLINARY PROCEEDINGS
 

 In March 2009, the ODC filed formal charges against respondent. In March 2010, the ODC amended the formal charges. Thereafter, respondent answered the formal charges. While not expressly admitting any misconduct, respondent did offer an apology to the complainants and the disciplinary board. He also asserted that his personal problems during his divorce were a factor in mitigation.
 

 Hearing Committee Report
 

 This matter proceeded to a formal hearing on the merits. After considering the testimony and evidence presented at the hearing, the hearing committee made the following general factual findings:
 

 1. Respondent was playing fast and loose with the funds he received. His accounting to the ODC of expenditures of client funds was unacceptable. His lack of cooperation with arbitrators and the ODC, as well as his testimony at the hearing, indicated a general disregard for the intent and spirit of the guidelines imposed upon an attorney regarding client funds. Respondent blamed his problems on external factors, including his divorce, his secretaries, and the judiciary. He admitted that he is a bad businessman and that the “escrow thing” is a “new animal” for him.
 

 |r2. Respondent was a sole practitioner and primarily responsible for the trust account. He failed to deposit client funds into the trust account and/or made improper transfers from the trust account.
 

 3. Respondent had written agreements with clients that were unclear, confusing, and misleading to the clients. If the clients are to be believed, respondent made promises that were far beyond reasonable for an experienced practicing attorney.
 

 4. Respondent engaged in the practice of criminal law and had repeated encounters with clients and their relatives whose consistent statements were that respondent claimed he could deliver positive results that were, in truth, beyond reasonable expectations. These same clients and relatives paid fees that may border on unreasonable and for which there were not proper accountings. The funds also have not been repaid pursuant to arbitration.
 

 Additionally, the committee made the following factual findings specific to each count of the formal charges:
 

 Count I — Mr. Wenk’s mother signed a fee agreement prepared by respondent and paid him $20,075. Apparently, the funds were placed directly in respondent’s operating account, and there was no accounting as to the funds that were supposed to be placed in respondent’s trust account for medical experts and expenses. Respondent took the position that he was entitled to a $2,500 fee for each of the cases that were set for trial, whether or not the cases actually went to trial, and four separate cases against Mr. Wenk were set for the same day. Respondent acknowledged his poor accounting practices but claimed his conduct was not unethical.
 

 Based on these facts, the committee determined respondent violated Rules 1.15(a)(b) & (c) and 1.5(f)(3)(4) & (5) of the Rules of Professional Conduct in that he failed to deposit client funds into a trust account, failed to properly account for 19client funds, failed to refund unearned fees following termination prior to completion of cases, and failed to refund fees as found by neutral arbitrators.
 

 Count II — Mr. Winn hired respondent to represent him in three separate mat
 
 *68
 
 ters. The first was a forfeiture matter in which respondent recovered $8,041 for Mr. Winn. Respondent kept one-third as a contingency fee but retained the remaining funds, claiming they were used to pay his fees and expenses in Mr. Winn’s criminal matter. Respondent was paid a $30,000 fee for the criminal matter. He obtained the $30,000 from the settlement of an insurance claim he handled for Mr. Winn. Respondent claimed some of the funds were used to pay a non-licensed private investigator, LaBruce Snow. Respondent testified that Mr. Snow was his employee and was paid $75 per hour. Mr. Snow testified that he was paid $12 per hour. There was no accurate accounting of the expenditures and funds due to Mr. Winn. Additionally, an untimely writ was filed with the Louisiana Supreme Court.
 

 Based on these facts, the committee determined respondent collected an unreasonable fee for the filing of a writ deemed untimely and useless to the client, in violation of Rule 1.5(a). Respondent also failed to deposit client funds into a trust account, failed to remit funds to a client, and failed to provide an accounting of funds in violation of Rule 1.5(f).
 

 Count IV — Ms. Crow testified that she paid respondent $756 to visit her son in jail. She complained that, after paying the funds, she repeatedly tried to contact respondent without success. She also claimed that respondent never visited her son. Respondent’s response was that the $756 was a partial payment of a $1,000 fee to visit Mr. Hunter in jail. Respondent claimed that, after receiving the $756, he spoke with Mr. Hunter on at least two occasions and began preliminary research on his case. Respondent asserted that Mr. Hunter decided the $756 would be better spent on a full review of his file in lieu of having respondent visit him at jail. | ^Respondent reviewed the file and told Mr. Hunter and Ms. Crow that the fee for filing an appeal or petition for post-conviction relief would start at $2,500. According to respondent, Mr. Hunter and Ms. Crow made no further payments.
 

 Based on these facts, the committee determined respondent failed to properly communicate with his client, in violation of Rule 1.4. Additionally, respondent failed to account for funds paid in advance, in violation of Rule 1.5(f)(4).
 

 Count V — Mr. Floyd asked his parents to contact respondent for assistance with an application for post-conviction relief. Mr. Floyd had previously filed such an application
 
 pro se,
 
 which was denied, and stated that he was aware of the prohibition regarding repetitive applications. Mr. Floyd testified that he only met respondent for a few minutes at the jail and was told, “I am going to get you out.” Notwithstanding the previous denial of Mr. Floyd’s
 
 pro se
 
 application for post-conviction relief, respondent informed Mr. Floyd’s parents that he could be of assistance. While respondent claimed he made no guarantees, the Whittys both testified that respondent told them at the initial consultation that, for a $3,500 fee, he could “get [Mr. Floyd] out” and specifically used the term “guarantee.” Mr. Whitty testified that respondent told them nothing about the possibility of losing and that he would not have paid the fee if respondent had informed him that failure was possible. According to the Whittys, following the denial of respondent’s application for post-conviction relief, respondent told them he would handle an appeal for $4,000. They refused. Respondent and his investigator, LaBruce Snow, both testified that they never gave guarantees, and Mr. Snow testified that it was not unusual for clients to be very irritated and blame respondent when his legal efforts were unsuccessful. The Whittys pursued arbitration regarding
 
 *69
 
 the fee dispute with respondent, and the arbitrator awarded them a return of all their funds ($3,500) plus the cost of appearing at the arbitration ($100). Between February |1;2008 and February 2011, respondent repaid a total of $700, leaving a $2,900 balance.
 

 Based on these facts, the committee determined respondent charged an unreasonable fee, failed to account for funds, failed to cooperate in dispute resolution, and failed to refund fees as ordered, in violation of Rule 1.5(a).
 

 Count VI — On April 2, 2008, the United States Court of Appeals for the Fifth Circuit issued an order removing respondent for cause as counsel for Charles Gillespie. The order also required that any funds payable to respondent be forfeited. The court then ordered respondent to show cause within fifteen days why he should not be disciplined. A subsequent order, issued June 8, 2008, indicated that respondent had not responded, and the court suspended respondent from practicing before the court for one year. As a result of the order, the ODC issued a letter to respondent and learned that he had relocated to New York but had failed to update his address. Respondent testified that he never got the briefing notice from the Fifth Circuit, blaming his secretary and her drug problem. Respondent testified that he was not paid to represent Mr. Gillespie and that his client was not harmed. He also stated that there was a problem with his New York address that was not his fault.
 

 The committee found that respondent did not act diligently in this matter, but that he did not knowingly and intentionally fail to comply with a court order. Based on these facts, the committee determined the ODC did not meet its burden of proof in this count.
 

 Counts VII and VIII — The ODC alleged respondent failed to cooperate by failing to respond to two complaints and failing to claim the certified mail notifications of the complaints at his primary and secondary addresses. Respondent admitted he left Louisiana in 2008 and failed to notify the LSBA of his | ^correct address. Based on these facts, the committee determined respondent failed to cooperate with the ODC in its investigation, in violation of Rule 8.1(c).
 

 Count IX — In April 2004, Mr. Boult filed a
 
 pro se
 
 application for post-conviction relief, which eventually resulted in the trial court scheduling a hearing to consider whether the district attorney’s office had withheld exculpatory evidence. However, after Mr. Boult’s trial counsel signed an affidavit stating that he had been in possession of the evidence at issue, the application for post-conviction relief was denied in January 2005.
 

 Between December 1, 2004 and April 28, 2006, respondent received a total of $4,050 to represent Mr. Boult.
 
 [3]
 
 Respondent filed another application for post-conviction relief on December 5, 2005. Respondent denied that this application was repetitive and testified that the application had a factual basis. According to respondent, it was his intent to show that witnesses who had testified against Mr. Boult at his murder trial had been in fear of their lives from the actual shooter (who was now dead) and were prepared to testify that Mr. Boult was not the shooter. Respondent claimed that, while there were no new witnesses, the new evidence was that the testimony of the witnesses had changed.
 
 *70
 
 Nevertheless, the application for post-conviction relief was denied as repetitive on March 31, 2006.
 

 Thereafter, Mr. Boult filed a
 
 pro se
 
 writ application to the Second Circuit Court of Appeal, which application was denied. Mr. Boult and Mr. Lee then terminated respondent’s services in writing on May 28, 2006, June 1, 2006, June 6, 2006, and June 22, 2006. Both expressed dissatisfaction with his services. Mr. Lee sought a refund of $3,500. Respondent claimed he was entitled to the funds he received, plus an additional fee of $1,400.
 

 113Based on these facts, the committee found that in filing the application for post-conviction relief on behalf of Mr. Boult, respondent made a creative, if novel, argument on behalf of his client. Therefore, he did not violate Rule 3.1. However, respondent did engage in conduct involving dishonesty, fraud, deceit, and misrepresentation with respect to his fee and the client’s funds, in violation of Rule 8.4(c).
 

 Based on the above findings, the committee determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. In some instances, respondent acted intentionally. In other instances, he acted knowingly and, very often, with great negligence. The committee found as a fact that respondent cannot be trusted in a fiduciary capacity. Respondent’s repeated acts of conversion of funds, his failure to acknowledge responsibility for past actions, and his failure to make concerted efforts to repay losses caused and continue to cause substantial harm to his clients. Without identifying specific aggravating and mitigating factors, the committee stated that the aggravating factors far outweigh any mitigating factors.
 

 Under these circumstances, the committee recommended respondent be suspended from the practice of law for five years.
 
 [4]
 
 The committee further recommended respondent be required to complete the LSBA’s Trust Accounting School prior to returning to the practice of law and that he be supervised by a practice monitor. Finally, the committee recommended that respondent provide a full accounting to each of the complainants and that he refund all fees, as determined by an arbitrator.
 

 Both respondent and the ODC objected to the hearing committee’s report and recommendation.
 

 _jj^Disciplinary Board Recommendation
 

 After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. The board also determined that the record supports a finding that respondent violated the Rules of Professional Conduct as follows:
 

 Count I — Respondent violated Rules 1.5(f)(5), 1.15, and 8.1(c). To date, he has only paid $4,000 towards the arbitrator’s award. He failed to deposit a $2,500 expense payment from his client into a trust account as required. He admitted he was sloppy with some of his bookkeeping and could not explain why he was unable to provide a written accounting for the funds paid by Mr. Wenk’s mother. He also failed to provide the ODC with canceled checks and other financial documents that he was required to maintain, forcing the ODC to subpoena his trust account records to determine how the client’s funds were handled.
 

 
 *71
 
 Count II — Respondent violated Rules 1.5 and 1.15. He collected excessive fees for the services provided to Mr. Winn. He was paid for filing a writ to the Louisiana Supreme Court, but the writ was denied as untimely. In October 2005, he was given a $86,000 insurance settlement check on Mr. Winn’s behalf, and $80,000 of the check was designated as an agreed-upon fee. However, respondent retained and was unable to account for the remaining $6,000.
 

 Count IV — Respondent violated Rules 1.4 and 1.5(f)(4). He was paid a partial payment of $756 to visit Mr. Hunter in jail. Respondent did not visit Mr. Hunter in jail, nor did he communicate to Mr. Hunter his reasons for failing to visit the jail. Ms. Crow testified that she made repeated unsuccessful attempts to communicate with respondent. Ms. Crow also testified that respondent failed to provide an accounting of the work he performed on Mr. Hunter’s behalf.
 

 Count V — Respondent violated Rules 1.5(a), 1.5(f)(5), and 8.4(c). The arbitrator ordered respondent to refund the full $3,500 fee paid by the Whittys, plus 11S$100 to compensate the Whittys for having to travel to the arbitration, noting that “[njothing in the work done by Mr. Cucci appeared to be more than the re-filing of the original objection to the trial judge’s first ruling.” To date, respondent has only paid the Whittys $700.
 

 Count VI — Respondent failed to keep his address current with the LSBA, in violation of Rule 8.1(c). The board agreed with the committee that the ODC did not meet its burden of proof with respect to Rules 3.4(c) and 8.4(d).
 

 Counts VII and VIII — Respondent violated Rule 8.1(c) in each matter by failing to keep his address current with the LSBA and, in turn, failing to respond to complaints and to claim certified mail sent to his primary and secondary addresses.
 

 Count IX — The ODC failed to prove by clear and convincing evidence that respondent was not in good faith when he filed an application for post-conviction relief based on eyewitness testimony he believed was new. An exhibit attached to respondent’s application for post-conviction relief contained interviews of eyewitnesses, one of whom was a newly-identified witness to the underlying crime. Therefore, respondent did not violate Rule 3.1. However, respondent did engage in dishonest conduct with respect to the fee arrangement and the accounting of the client’s funds. Accordingly, respondent violated Rule 8.4(c).
 

 The board determined respondent violated duties owed to his clients and the legal profession. At a minimum, he acted knowingly, and he harmed multiple clients by failing to account for funds, failing to properly maintain his client trust account, and failing to refund unearned fees. Respondent’s failure to update his registration address with the LSBA caused him to appear unresponsive to the ODC during these proceedings. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined the baseline sanction is suspension.
 

 In aggravation, the board found multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or 11f,orders of the disciplinary agency, vulnerability of the victims, and substantial experience in the practice of law (admitted 1997). In mitigation, the board found the following factors: absence of a prior disciplinary record, personal or emotional problems, and remorse.
 

 In addressing the issue of an appropriate sanction, the board noted that respondent has no prior disciplinary history, is a zealous criminal defense attorney, and struggled through a difficult divorce dur
 
 *72
 
 ing the period of misconduct. Considering the record as a whole, the ABA Standards, and case law involving similar misconduct, the board recommended respondent be suspended from the practice of law for three years, with six months deferred. The board further recommended respondent be ordered to provide a full accounting to each of the complainants and that he refund all unearned fees, as determined by an arbitrator.
 

 Both respondent and the ODC filed objections to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See
 
 In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 |i7In this matter, respondent is charged with multiple counts of misconduct. The record supports a finding that respondent made dishonest or misleading statements to his clients by guaranteeing a particular outcome in their cases. Respondent also failed to disburse client funds, failed to refund unearned fees and charged excessive fees, and failed to provide his clients with requested accountings. Finally, he failed to cooperate with the ODC in several investigations. Accordingly, respondent has violated the Rules of Professional Conduct as found by the disciplinary board. In addition, in Count IX, we find respondent violated Rule 1.5(f)(5) by failing to refund the $1,000 fee he was paid to file a writ application with the court of appeal on behalf of Mr. Boult, as the record reflects respondent did not file the writ application.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 We find respondent acted knowingly, if not intentionally. He violated duties owed to his clients, the legal system, and the legal profession, causing actual and potential harm. The baseline sanction for this type of misconduct is suspension.
 

 Aggravating factors are a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law. Mitigating factors are the absence of a prior disciplinary record, personal or emotional problems, and remorse.
 

 | ^Considering the record of this matter in light of the aggravating and mitigating factors present, we find the appropriate sanction for respondent’s misconduct is a three-year suspension from the practice of
 
 *73
 
 law. We will also order respondent to provide an accounting to each of his clients, and make full restitution to the clients, as appropriate.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Cucci, Jr., Louisiana Bar Roll number 25016, be and he hereby is suspended from the practice of law for three years. It is further ordered that respondent provide an accounting to each of his clients subject of the formal charges, and make full restitution, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Respondent is ineligible to practice law in Louisiana due to his failure to pay bar dues, pay the disciplinary assessment, and comply with mandatory continuing legal education requirements. He is also admitted to the bar of Texas and of New York, where he presently resides.
 

 [2]
 

 . During the formal hearing, the ODC dismissed the substantive allegations of Counts VII and VIII based on the complainants’ failure to cooperate in the disciplinary process. As such, this opinion only addresses the allegation that respondent failed to cooperate with the ODC in its investigation.
 

 [3]
 

 . The receipts in the record indicate that respondent actually received $5,050 in the Boult matter: $50 for a consultation on December 1, 2004; $2,500 on December 9, 2004; $1,500 on November 21, 2005; and $1,000 on April 28, 2006.
 

 [4]
 

 . This court’s rules do not permit a suspension in excess of three years. Supreme Court Rule XIX, § 10(A)(2).